UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WESTERN HOLDINGS, LLC, <br><br>　　　　　Plaintiff, <br><br>vs. <br><br>METABOLIC RESEARCH, INC. et al., <br><br>　　　　　Defendants. | 3:13-cv-00440-RCJ-WGC <br><br>**ORDER** |

This case arises out of the alleged infringement of a patent for using nicotine in combination with exercise to increase muscle mass in mammals. Pending before the Court are the parties' claim construction ("*Markman*") briefs.

I.　**FACTS AND PROCEDURAL HISTORY**

Plaintiff Western Holdings, LLC has sued Defendants Metabolic Research, Inc. ("MRI") and David P. Summers for infringement of U.S. Patent No. 7.074,812 (the "Patent"), entitled "Development of Muscle Mass in a Mammal." Plaintiff is the exclusive licensee of the Patent and has sued Defendants based on its allegedly infringing product, Stemulite. MRI defaulted, and the Court held a damages hearing contemporaneously with the *Markman* hearing.

///

///

**II.     LEGAL STANDARDS**

The construction of terms found in patent claims is a question of law to be determined by the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). Consequently, courts construe claims in the manner that "most naturally aligns with the patent's description of the invention." *Id.*

The first step in claim construction is to look to the language of the claims themselves. "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips*, 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  A disputed claim term should be construed in light of its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.*  In some cases, the ordinary meaning of a disputed term to a person of skill in the art is readily apparent, and claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.  Moreover, a district court is not obligated to construe terms with ordinary meanings, lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (noting that claim construction "is not an obligatory exercise in

redundancy."); *see also Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001) (finding no error in the non-construction of the word "melting"); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) (finding no error in the lower court's refusal to construe "irrigating" and "frictional heat").

Claim construction may deviate from the ordinary and customary meaning of a disputed term only if: (1) "a patentee sets out a definition and acts as his own lexicographer"; or (2) "the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Ordinary and customary meaning is not always the same as the dictionary definition. *Phillips*, 415 F.3d at 1321.

> Properly viewed, the "ordinary meaning" of a claim term is its meaning to the ordinary artisan after reading the entire patent. Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification.

*Id.* "Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is therefore "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of claims." *Phillips*, 415 F.3d at 1315. Courts can also look to the prosecution history as part of the intrinsic record to determine how the Patent Office and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, the prosecution history lacks the clarity of the specification and is often less useful for claim construction purposes. *Id.*

Finally, "[a] court may, in its discretion, receive extrinsic evidence in order to aid the court in coming to a correct conclusion as to the true meaning of the language employed in the patent." *Markman*, 52 F.3d at 980 (internal citations and quotation marks omitted).  Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.*  Although such evidence may aid the court in construing claim terms, "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319.  Thus, "while extrinsic evidence can shed useful light on the relevant art, . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (internal quotation marks omitted).

**III.    ANALYSIS**

The parties dispute the construction of a single term in Claim 1 of the Patent: "amount sufficient."  Plaintiff suggests the term is in no need of construction and should carry its ordinary and customary meaning.  Summers suggests the term be construed to mean "3 micrograms of nicotine to 60 micrograms of nicotine."

The Court agrees with Plaintiff.  Summers imports his suggested limitations into the claim language based on the two examples provided in the specifications, i.e., the 6% by weight aqueous solution given to the test group of mice in Example 1 and the 3 and 6 microgram capsules of nicotine given to the test groups of human males in Example 2. *See* U.S. Patent No. 7,074,812 col. 3, ll. 20–22 (filed Aug. 2, 2003); *id.* col. 4, ll. 56–58.  The claim language, however, does not appear to import these limitations, and the specifications, in addition to simply noting that the invention is practiced by "administering nicotine to a mammalian body in *amounts sufficient* to stimulate, recruit and mobilize muscle cells to a specific muscle mass," *id.*

col. 2, ll. 31–33 (emphasis added), specifically disclaims any limitations based on the embodiments used as examples, and in fact indicates that additional experiments have been done that are not presented as examples therein, *see id.* col. 2, ll. 58–64.  A person of ordinary skill in the art who read the Patent would therefore not perceive it to claim the method only within the scope of the examples given in the specifications.

Of course, a person skilled in the art might have a difficult time ascertaining from the specifications how much nicotine is in fact sufficient to produce the result, because the Patent does not indicate any lower boundary at which the nicotine supplement becomes effective to produce the result in either mice or human males.  The claim may very well be indefinite for that reason. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) (ruling that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention" and overruling the Federal Circuit's "amenable to construction" and "insolubly ambiguous" standards).  But the disputed term cannot be construed to include the limitations of the example embodiments.

## CONCLUSION

IT IS HEREBY ORDERED that the term "amount sufficient" is in no need of further construction.

IT IS SO ORDERED.

Dated this 26th day of September, 2014.

_____
ROBERT C. JONES
United States District Judge