UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WESTERN HOLDINGS, LLC,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>METABOLIC RESEARCH, INC. et al.,<br><br>　　　　　Defendants. | 3:13-cv-00440-RCJ-WGC<br><br>**ORDER** |

This case arises out of the alleged infringement of a patent for using nicotine in combination with exercise to increase muscle mass in mammals. Pending before the Court are a Motion for Summary Judgment (ECF No. 78) and a Motion to Exclude Evidence of Damages (ECF No. 73). For the reasons given herein, the Court grants the motion for summary judgment in part and denies it in part and denies the motion to exclude evidence of damages.

I.    FACTS AND PROCEDURAL HISTORY

Plaintiff Western Holdings, LLC sued Defendants Metabolic Research, Inc. ("MRI") and David P. Summers in this Court for infringement of U.S. Patent No. 7,074,812 (the "Patent"), entitled "Development of Muscle Mass in a Mammal." Plaintiff, the exclusive licensee of the Patent, sued Defendants based on their allegedly infringing product, Stemulite. MRI defaulted. The Court issued a *Markman* order, agreeing with Plaintiff that the sole disputed term in Claim 1

of the Patent, "amount sufficient," was in no need of further construction beyond its ordinary meaning. Summers has now moved for summary judgment and to exclude evidence of damages.

## II.     LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. ANALYSIS

#### A. Summary Judgment

Summers notes that the Patent is a method patent and argues that because Plaintiff has no evidence that any individual infringed the Patent, it cannot prove that Summers is liable for either direct infringement, contributory infringement, or inducing infringement. Summers also argues that the suit is barred by the statute of limitations and laches. The Court will address the affirmative defenses first.

1.     **Statute of Limitations**

Summers argues that 35 U.S.C. § 286 bars the action because the alleged infringement occurred more than six years prior to the filing of the complaint, i.e., before August 15, 2007. Summers argues that because he licensed the technology to MRI in January 2007, and because the licensing of the technology is the sole act of infringement for which Summers is personally accused, the statute of limitations has run as to him.

The License Agreement is adduced as Exhibit F to Summers's motion. It is dated March 9, 2007. (*See* License Agreement, ECF No. 78-6). The License Agreement concerns the licensing of "certain technologies relating to the use of fungi, plants, or animals for the production of anti-inflammatory and analgesic products used to treat and cure inflammatory diseases . . . ." (*See id.*). That would not appear to encompass the Stemulite technology, i.e., the use of nicotine and exercise to increase muscle mass in mice or human males. However, the License Agreement goes on to note that the "Patent Rights" to be licensed includes:

> any patent applications resulting from the provisional applications listed on Exhibit A, and any divisionals, continuations, continuation-in-part applications, and continued prosecution applications of the provisional patent applications listed on Exhibit A and of such patent applications that result from the provisional patent applications listed on Exhibit A, and the resulting patents;

(*Id.*). In other words, the license included any and all prodigy applications and resulting patents ultimately stemming from the provisional applications (the "Licensed Applications") listed in Exhibit A to the License Agreement. Exhibit A lists two provisional applications, one called "Composition and Method of Producing Endogenous Therapeutic Anti-Inflammatory Eiconasids and their Metabolites by Exogenous or Oral Means," Application No. 60/570,649, and another called "Method and Process for Producing Anti-inflammatory Products from Fungi," for which a USPTO serial number had not yet been assigned.

The Court is unable to link the Patent to the Licensed Applications via either a backward or forward chronological analysis, and Summers's motion provides no assistance in this regard. First, the Court cannot link the Patent to the Licensed Applications by working backward from the Patent. According to the public records of the USPTO available on the Patent Application Information Retrieval ("PAIR") website, the Patent was based on Application No. 10/633,325 and claimed priority to Application Nos. 60/475,131 and 60/400,649. Both of those "parent" applications concerned nicotine-related claims, and neither of those applications have their own "parent" applications. Second, the Court cannot link the Patent to the Licensed Applications by working forward from the Licensed Applications. Application No. 60/570,649 does not even appear to exist in the database, and the other Licensed Application cannot be searched for without an application or other number. Finally, Summers claims that he and his co-inventor filed provisional Application No. 60/883,552 called "Composition, Method, and Delivery of Low and High Molecular Weight Compounds Covalently Bonded to a Foundation Chaperone Molecule for Development of Increased Energy and Muscle Mass and Sustained Electrolytes in a Mammal" on January 5, 2007. But that application does not appear to exist in the database, either. There is no evidence linking it to either the License Agreement or the Patent.

In summary, because Summers has not provided evidence to show that the March 9, 2007 license was the license at issue in this case, he has not satisfied his initial burden on summary judgment to present evidence that would entitle him to a directed verdict on the statute of limitations issue were his evidence to go uncontroverted at trial. Without more than Summers has provided and the Court can ascertain from the public records, the License Agreement does not tend to show that Summers licensed the Stemulite technology to MRI more than six years before the present case was filed or even that he ever licensed the Stemulite technology to MRI.

Indeed, if the License Agreement adduced by Summers were the only evidence Plaintiff had of infringement of the Patent—as opposed, for example, to some separate licensing of the Stemulite technology or Summers's acceptance of royalties based on MRI's use of the Stemulite technology—Summers would be entitled to summary judgment on the issue of infringement, because the License Agreement itself is not evidence that Summers licensed the Stemulite technology to MRI. The Court therefore denies summary judgment to Summers on the statute of limitations defense. The Court need not address Plaintiff's arguments as to the discovery rule or that MRI's sale of Stemulite occurred within the limitations period.

  **2. Laches**

Plaintiff is correct that because Summers has not shown that the statute of limitations applies, Plaintiff is entitled to the presumption that laches does not apply. Plaintiff is not correct, however, that Summers has adduced no evidence at all tending to show when Plaintiff discovered the alleged infringing activity. Summers has adduced evidence of a case previously filed by Plaintiff against Summers in the District of Utah in which Plaintiff accused Summers of infringing the Patent. Summers's Exhibit E is a copy of the complaint in that case, *Western Holdings, LLC v. Summers*, No. 2:13-cv-144. The case was filed on February 22, 2013. The docket of the case indicates that Plaintiff voluntarily dismissed the case in May 2013. The complaint in that case does not indicate when Plaintiff learned of the infringement, but it indicates that Plaintiff informed its licensor of the alleged infringement in December 2012—Plaintiff's license gives the licensor the right of first refusal as to suing for patent infringement—which is consistent with the allegations in the present Complaint. Presumably, Plaintiff learned of the infringement shortly before that time. Summers provides no evidence that Plaintiff learned of the alleged infringement at an earlier date. The Court cannot, without more, find that

Plaintiff slept on its rights so as to unduly prejudice Summers in this case, and the motion is denied as to the laches defense.

### 3. Direct Infringement

#### a. Summers

Summers argues there is no evidence that he directly infringed the Patent under 35 U.S.C. § 271(a), because he has never used it. He notes that the Patent consists of method claims, and "method claims [can] only be directly infringed by use." *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1320 (Fed. Cir. 2005). Using a method patent requires each step of the method to be performed, and an alleged infringer is not liable for the performance of steps of a method patent by another if the person does not control or direct the performance of those steps. *See Multiaction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328–30 (Fed. Cir. 2008) ("[T]he issue of infringement in this case turns on whether [the defendant] sufficiently controls or directs other parties . . . such that [the defendant] itself can be said to have performed every step of the asserted claims.").

> [W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises "control or direction" over the entire process such that every step is attributable to the controlling party, i.e., the "mastermind." At the other end of this multi-party spectrum, mere "arms-length cooperation" will not give rise to direct infringement by any party.

*Id.* at 1329 (citations omitted).

The Patent includes nine claims. *See* U.S. Patent No. 7,074,812 cols. 6–8 (filed Aug. 2, 2003). Claim 1 is an independent method claim from which the other eight method claims depend directly or indirectly, so if Summers has not infringed Claim 1, he has not infringed the other claims, either. Claim 1 reads:

> A method of developing muscle mass in a mammal by stimulating, recruiting and mobilizing muscle cells to a specific muscle mass, the method comprising administering nicotine or nicotine acetylcholine receptor agonist (nAChR) to a mammal in an amount sufficient combined with exercise to increase said specific muscle mass.

(*Id.* col. 6, l. 66–col. 7, l. 4). Claim 1 consists of a single step, which begins after the transitional phrase "the method comprising." The text preceding the transitional phrase is the preamble of the claim, which does not limit the claim. The single step of the claim consists of "administering nicotine or nicotine acetylcholine receptor agonist (nAChR) to a mammal in an amount sufficient combined with exercise to increase said specific muscle mass." If Summers has never "administered" nicotine or nAChR to a mammal in an amount sufficient combined with exercise to increase muscle mass (beyond the increase that the exercise alone would cause, a limitation required to make the claim "useful" under § 101), or directed or controlled another person in doing so, he has never infringed the Patent.

Summers points out that Plaintiff has simply accused him of having sold or otherwise transferred Stemulite technology to MRI and others. Summers is correct that such activity is no accusation that he has directly infringed the Patent, because infringement of a method patent only occurs if one uses the method. In response, Plaintiff appears to abandon any previous claim that Summers himself directly infringed the Patent (except on an alter ego theory, which the Court addresses, *infra*), arguing only that MRI directly infringed and that Summers induced infringement and contributorily infringed.

    **b.**    **MRI**

MRI has defaulted, but Summers has not defaulted and may argue that MRI did not directly infringe, because Plaintiff must prove that MRI directly infringed in order to prove that Summers induced infringement or contributorily infringed. Summers argues that MRI did not

directly infringe the Patent because it neither used the Patent nor controlled or directed others to use it.

The Court denies summary judgment on this issue.  Plaintiff has adduced evidence in opposition that MRI directed its celebrity spokespersons to use Stemulite and report their results on camera in order to promote the product to consumers. (*See* Owen Dep. 168:5–169:12, July 8, 2014, ECF No. 83-5).  That alone is enough for a jury to find that MRI directly infringed.  Summers only argues that MRI did not control or direct its customers' use.  Plaintiff adduces evidence that MRI directed its customers' use, as well.  Where Claim 1 consists of a single step of "administering," the sale of a product designed for human consumption is enough for the manufacturer to have "directed" the use of the method by the consumer.  It is not as if MRI sold the substance for use as a glue or a laxative, or for some other purpose unrelated to the patented technology, and consumers then misused the product by ingesting it to build muscle mass.  There is evidence that MRI marketed the product for precisely the patented use, resulting in significant sales. (*See* Stemulite Packaging, ECF No. 83-8 (explicitly directing customers how to take the product in conjunction with exercise to increase muscle mass); Owen Dep. 36:11–19 (testifying that sales of Stemulite exceeded $8 million in the first two years)).  Those circumstances permit a jury to find that at least one customer used the Patent at the direction of MRI. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009).

### 4. Inducing Infringement

A person is liable for inducing infringement under § 271(b) if he actively and knowingly aids and abets another's direct infringement. *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc).  Knowledge of the other person's direct infringement is not enough; "specific intent and action to induce infringement must be proven." *Id.*

Summers first argues that he cannot have induced infringement, because Plaintiff cannot show that MRI directly infringed. The Court has found there to be sufficient evidence adduced of MRI's direct infringement to preclude defensive summary judgment on that issue.

Second, Summers argues that there is no evidence he had the requisite intent to induce infringement. Inducement requires that the defendant know not only that the patent exists but also that the acts he induces constitute patent infringement. *See Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1367 (Fed. Cir. 2013). That is the "specific intent" required. *DSU Med. Corp.*, 471 F.3d at 1306. Negligence as to infringement is not enough. *Commil USA, LLC*, 720 F.3d at 1366–67. Summers admits that he knew of the Patent but argues that he did not knowingly aid and abet infringement, because it was his belief that Stemulite did not contain enough nicotine (eggplant extract) to trigger the cell recruitment to increase muscle mass of the end user as claimed by the Patent. It was his belief that Stemulite was a completely different product from Endothil-CR and that Stemulite did not infringe the Patent. Summers has adduced no evidence in support of his claim that he lacked the requisite intent. The Court will not scour the 271-page transcript of Summers's deposition attached to his motion (which Summers has not cited in support, in any case), because that document is not properly authenticated via the reporter's certification. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 & n.11 (9th Cir. 2002) (citing Fed. R. Evid. 901(b); Fed. R. Civ. P. 30(f)(1) & 56(e)). Summers has therefore not carried his initial burden on defensive summary judgment under the first disjunctive *Celotex* prong (negation of an element of the claim). Even assuming he has carried his initial burden on the second *Celotex* prong (demanding that the non-moving party provide some evidence of the claim), Plaintiff has satisfied its shifted burden. (*See* Owen Dep. 93:6–97:13 (indicating that Summers first formulated Stemulite to contain tomato extract because of its nicotine content,

then switched to eggplant extract because of its even higher nicotine content and belief that nicotine was an effective muscle building component); Summers Email, June 5, 2007, ECF No. 83-6, at 3 (indicating his belief that adding 10 mg of purified eggplant would work to build muscle mass by initiating stem cell recruitment and mobilization)).  As Plaintiff correctly notes, this Court has ruled that the Patent covers the use of any amount of nicotine sufficient to increase muscle mass when combined with exercise.  There is sufficient evidence for a jury to find that Summers knowingly induced MRI to infringe the Patent.

Third, Summers argues that "inducing inducement infringement is not actionable."  In other words, he argues that MRI did not directly infringe but at most indirectly infringed, and a person cannot be liable for inducing another person to induce a third person to directly infringe.  The Court rejects this argument without addressing the analytical soundness of the theory.  In the present case, there is enough evidence for trial that MRI directly infringed, Summers is accused of inducing that infringement, and Summers is not entitled to summary judgment on the issue of his mental state.  The Court rejects Summers's argument that he can only be liable for inducing infringement if he induced MRI's customers to infringe.  He need only have induced any other person to directly infringe, and MRI directly infringed if it directed another person to use the Patent.  MRI's direction of its spokespersons and customers to use the Patent is direct infringement, not inducing infringement.

Finally, Summers notes in passing in the previous argument that "the only individual action alleged by Plaintiff is that Summers licensed the Stemulite technology to MRI."  As the Court has noted, *supra*, if the only alleged act of infringement by Summers were the License Agreement, there would be no evidence that he infringed the Patent, because there is no evidence connecting the Licensed Applications to the Patent.  But Plaintiff provides evidence that

Summers did more than merely license the Stemulite technology to MRI. Plaintiff provides evidence that Summers convinced MRI to "knock off Endothil," estimating that Plaintiff didn't have the "money to get in a fight about it," and that he assisted in marketing and selling Stemulite by drafting marketing materials that were based on the mouse study he himself conducted in connection with the Patent. (*See* Owen Dep. 86:20–87:20; 126:10–127:22). That evidence also tends to show that Summers had the requisite mental state to induce infringement, because it shows that the only reason he didn't anticipate a legal battle was because he believed Plaintiff didn't have the funds to pursue a lawsuit.

### 5. Contributory Infringement

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). Summers argues that he sold no component of the Patent. But the allegations are that Summers offered to sell or sold a material (Stemulite) within the United States for use in practicing the Patent, knowing that Stemulite was made for such a use and not suitable for substantial noninfringing use. The word "component" in the statute modifies the members of the list that follows it: "machine, manufacture, combination or composition." Selling a component of one of the members of that list is one way to violate the statute. But that list is followed by the clause "or a material or apparatus for use in practicing a patented process . . . ." One who sells a material (such as Stemulite) for use in practicing a patented process is also liable under the statute if the knowledge requirement is satisfied.

The Court cannot read "component" as also modifying "material or apparatus," because the latter words are set apart from the former word by an additional comma and conjunction (", or") beyond the conjunction ("or") that separates the members of the previous list.  That is a good clue that the verbs describing the violation ("offers to sell or sells . . . or imports") are meant to modify "component" and "material or apparatus," and that "component" is itself only meant to modify the list that immediately follows it ("machine, manufacture, combination or composition").  This intent is emphasized by the fact that the list modified by "component" lacks a serial or "Oxford" comma, i.e., a comma between the penultimate member of the list and the conjunction.  The omission of a serial comma in the list following "component"—an omission that is disfavored, especially in formal writing, *see* Bryan A. Garner, *The Redbook: A Manual on Legal Style* § 1.3, at 3–4 (2nd ed. 2006)—gives the comma and conjunction following the list more force of separation, similar to the effect of having placed a serial comma in the preceding list and a semicolon before "or a material or apparatus."  Moreover, the Court's reading is consistent with the substance of the patent law.  One cannot, as Summers himself notes, sell a component of a process.  One can, however, sell a material or apparatus made for use in infringing a patented process.  It is almost certainly for that reason that the statute distinguishes between selling parts of machines, products, or materials on the one hand (contributory infringement of non-process patents) and selling materials or devices made for use in a patented process (contributory infringement of process patents).

Still, Plaintiff has adduced no evidence that Summers himself ever sold, offered to sell, or imported Stemulite, but only that MRI did.  As the Court has noted, *supra*, the License Agreement is no evidence of Summers having ever licensed the Stemulite technology to MRI. Even if it were, it would not be evidence that Summers himself sold, offered to sell, or imported

Stemulite. Plaintiff cites to evidence that only tends to show Summers is liable for inducing infringement, not contributory infringement. But there is sufficient evidence adduced that Summers has abused the corporate form via MRI and that a jury might find alter ego liability for MRI's sale of Stemulite, which would support a finding of contributory infringement. Plaintiff has adduced evidence that Summers was a majority shareholder of MRI, used MRI's accounts as his own, and failed to adhere to corporate formalities. (*See* Owen Dep. 37:6–41:22, 56:10–57:17, 61:20–63:2, 74:9–10). There is sufficient evidence for a jury to find alter ego liability, and if that can be proved, Summers may be liable not only for MRI's contributory infringement, but also for its direct infringement.

### B.  Exclusion of Evidence of Damages

Summers asks the Court to exclude any evidence of damages for Plaintiff's failure to disclose an initial damages calculation within 14 days of the Rule 26(f) conference. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii), (a)(1)(C). Summers claims that Plaintiff has still not provided any calculation of damages. Summers notes that in response to his interrogatory on the issue, Plaintiff responded that it could not yet accurately calculate damages, because Defendants had not disclosed the extent of Stemulite sales. For this reason, Plaintiff currently responds that all evidence concerning damages has always been in Summers's control, and that Summers has refused to disclose the extent of Stemulite sales, which information is necessary to an accurate calculation of damages. Plaintiff has also noted that it has produced a detailed damages calculation (10% of net Stemulite sales) via its Chief Financial Officer, Steve Dickert, whose testimony supported the default judgment against MRI. The Court finds that even assuming there was any failure to disclose, it was both substantially justified and harmless based on

Summers's failure to disclose the net sales of Stemulite and Summers's possession of the relevant information.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 78) is GRANTED IN PART and DENIED IN PART.  Summary judgment is granted as to direct infringement (except under an alter ego theory), but is otherwise denied.

IT IS FURTHER ORDERED that the Motion to Exclude Evidence of Damages (ECF No. 73) is DENIED.

IT IS SO ORDERED.

Dated this 25th day of March, 2015.

_____
ROBERT C. JONES
United States District Judge