UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| WESTERN HOLDINGS, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | 3:13-cv-00440-RCJ-WGC |
| vs. | | |
| | | **ORDER** |
| METABOLIC RESEARCH, INC. et al., | | |
| Defendants. | | |

This case arises out of the alleged infringement of a patent for using nicotine in combination with exercise to increase muscle mass in mammals. Pending before the Court is a Motion to Amend (ECF No. 97) and a Motion for Summary Judgment (ECF No. 100). For the reasons given herein, the Court denies the motion to amend and grants the motion for summary judgment.

I.   **FACTS AND PROCEDURAL HISTORY**

Plaintiff Western Holdings, LLC sued Defendants Metabolic Research, Inc. ("MRI") and David P. Summers in this Court for infringement of U.S. Patent No. 7,074,812 (the "Patent"), titled "Development of Muscle Mass in a Mammal." Plaintiff, the alleged exclusive licensee of the Patent, sued Defendants based on their allegedly infringing product, Stemulite. MRI defaulted. The Court issued a *Markman* order, agreeing with Plaintiff that the sole disputed term

in Claim 1 of the Patent, "amount sufficient," was in no need of further construction beyond its ordinary meaning. Summers moved for summary judgment and to exclude evidence of damages. The Court granted the motion for summary judgment in part, granting Summers summary judgment as to the claim of direct infringement (except under an alter ego theory) but refusing to grant summary judgment as to the statute of limitations, laches, or on the merits of the contributory infringement or inducing infringement claims. The Court denied the motion to exclude evidence of damages. Summers has filed a successive motion for summary judgment based on lack of standing.

## II.     LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

///

## III. ANALYSIS

Summers argues that Plaintiff has no standing to sue for infringement of the Patent because Plaintiff's license is nonexclusive, correctly noting that only a patent owner or exclusive licensee may sue for infringement, but that a nonexclusive licensee has "no constitutional standing . . . under the Patent Act to bring suit or even to join a suit with the patentee because a nonexclusive (or 'bare') licensee suffers no legal injury from infringement." *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001). As evidence that Plaintiff is a nonexclusive licensee of the Patent, Summers adduces excerpts of a trial transcript from August 3, 2015 in the Third Judicial District Court of Utah. (*See* Trial Tr., ECF No. 100, at 8). In that trial, Plaintiff and Novex Biotech, LLC sued Nutraceutical Development Corp. (*See id.* 1). Plaintiff's Chief Executive Officer Dennis Wayne Gay testified that Plaintiff's rights in the Patent were nonexclusive. (*Id.* 111–12 ("We don't have exclusive rights. We gave those up."); *id.* 198 ("[W]e gave up the exclusive agreement in January, or thereabouts, in 2006. I know Dr. Summers on that had a product called Stemulite out on the marketplace and there, that we thought about, what do we do with that. Wasn't nothing we could because we had a nonexclusive license agreement, so . . ."")).[1]

Summers has satisfied his initial burden on summary judgment by producing evidence that would entitle him to a directed verdict based on Plaintiff's lack of standing if unrebutted.

---

[1] Plaintiff argues in opposition that Gay's statements are inadmissible under the parol evidence rule. Not so. The parol evidence rule only (potentially) makes the statements inadmissible as to the interpretation of the licensing agreement. That is, Gay's statements would be inadmissible to prove the meaning of any unambiguous provision of the ELA. But the interpretation of the ELA is not at issue. Plaintiff does not argue that the ELA does not provide for termination of or lapse of the exclusivity of the license under certain circumstances. *See infra*. Plaintiff only argues that the exclusivity of the license never in fact lapsed under the ELA's provisions. That fact issue does not concern the interpretation of the ELA. Gay's statements are not generally inadmissible to prove the fact issue of whether the license became nonexclusive under its terms.

The evidence shows that Plaintiff has been only a nonexclusive licensee since 2006. Because the Complaint alleges that Defendants infringed no earlier than 2007, (*see* Compl. ¶ 19, ECF No. 1), the Court need not address the legal issue of whether a party that is no longer an exclusive licensee has standing to sue for infringement that occurred when it was.

In opposition, Plaintiff has adduced a copy of the Exclusive License Agreement ("ELA") between it and Nutraceutical Development Corp. ("NDC"). (*See* ECF No. 102-2). The ELA is dated July 1, 2003. (*Id.* 1). The ELA notes that NDC is an exclusive licensee "of an invention and confidential information relating to a method of developing muscle mass using nicotine or nicotine acetylcholine receptor agonist (nAChR) to stimulate, recruit and mobilize muscle cells" with the authority to issue sublicenses. (*Id.*). Under the ELA, NDC had the right to terminate the license or render it nonexclusive after eight months if Plaintiff had not put it into commercial use directly or through the issuance of a sublicense. (*Id.* 3–4). Unless so terminated, or if any royalties specified in the ELA were not timely paid, the ELA was to remain in effect "until the last patent or patent application which cover the Licensed Product has expired or has been abandoned . . . ." (*Id.* 6). This piece of evidence (the ELA) is sufficient to show that the license was exclusive for at least eight months from July 1, 2003, but it does nothing to create a genuine issue of material fact as to whether the exclusivity in fact lapsed in approximately 2006, as Gay recently testified.

Plaintiff next adduces an excerpt of Summers's deposition, wherein he indicated that he believed Plaintiff was an exclusive licensee. (*See* Summers Dep. 48, 265, ECF No. 102-3). That exhibit is inadmissible, however, because it is not accompanied by the certification of the court reporter. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 & n. 11 (9th Cir. 2002) (citing Fed. R. Evid. 901(b); Fed. R. Civ. P. 30(f)(1) & 56(e)) ("A deposition or an extract therefrom is

authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. Ordinarily, this would have to be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted.  It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.'" (citations omitted)).  Even if it were admissible, the evidence does not tend to show that Plaintiff was an exclusive licensee during the relevant times.  Summers testified only that the license was exclusive at the time it was conveyed from NDC to Plaintiff (in 2003), (*see* Summers Dep. 48:21–23), and that he believed Plaintiff remained a (sub)licensee of the exclusive licensee, (*see id.* 265:19–21).  Neither of those things tends to contradict Gay's testimony that the exclusivity of Plaintiff's sublicense from NDC lapsed in 2006.

Plaintiff next adduces an excerpt from Gay's testimony at the Utah trial that is unhelpful as to whether Plaintiff's license was exclusive or nonexclusive at the relevant times.  The testimony simply notes that NDC had the option to declare the license nonexclusive upon nonpayment of certain royalties, but the testimony does not address whether this ever happened, (*see* Trial Tr. 106–08, ECF No. 102-4), and as Summers's excerpt of the same testimony shows, Gay admitted soon thereafter that Plaintiff's license exclusivity did in fact lapse in 2006, (*see* Trial Tr. 111–12, 198, ECF No. 100, at 8).

Plaintiff next adduces an excerpt of the testimony of Nick Nichols, Jr., the drafter of the ELA, from the Utah trial, wherein he testified as to his understanding of the clause permitting NDC to declare the license nonexclusive or terminate it altogether upon the nonpayment of royalties. (*See* Trial Tr. 17, 41–42, ECF No. 102-5).  He did not testify as to the fact of whether

the exclusivity lapsed.  Summers also testified as to his understanding of the purpose of the clause but not as to the fact of lapse. (*See id.* 55–56).

Plaintiff next adduces an excerpt of the testimony of Jeffrey Harder, apparently an expert, who testified as to his understanding of the clause, but not as to any facts concerning lapse. (*See* Trial Tr. 13, 31–32, ECF No. 102-6).

In summary, Plaintiff has not satisfied its shifted burden to create a genuine issue of material fact that it was an owner or exclusive licensee at any time since Summers allegedly began infringing in 2007.  Plaintiff mainly argues that because the ELA required NDC to exercise the option to render the license nonexclusive via written notice to Plaintiff, and because Summers adduces no evidence that it did so, the Court should deny summary judgment.  But Plaintiff need only provide evidence of a lack of ownership or exclusivity to satisfy his initial burden as to Plaintiff's lack of standing to sue, and he has done so.  Gay's testimony is evidence that the exclusivity of the license lapsed.  Summers need not prove lapse via any particular form of evidence, such as a copy of a letter from NDC invoking the lapse clause.  Gay's testimony is enough, if unrebutted, for a directed verdict on the issue.  Gay's testimony that Plaintiff gave up exclusivity of the license in 2006 needn't even necessarily be interpreted to imply a lapse under the ELA.  It could mean that Plaintiff gave some third party an exclusive sublicense and retained only a nonexclusive license.  Or it could mean that Plaintiff agreed to abandon exclusivity via some separate agreement with NDC.  It ultimately does not matter, because Gay's testimony is evidence that Plaintiff has not been an exclusive licensee (for whatever reason) since 2006, and Plaintiff has simply not rebutted that evidence but has only demanded further proof in the form of evidence specifically showing NDC's invocation of the lapse clause.  Summers need not provide such particularized evidence.  If Plaintiff is so certain that NDC never exercised its

option to render Plaintiff's license nonexclusive, it should be simple enough to provide a declaration to that effect from Gay or any of Plaintiff's interested officers, but Plaintiff has provided no such evidence.

Finally, the Court will not permit amendment at this late stage—as Summers notes, the motion was made over a year after the deadline to amend pleadings and eight months after discovery closed—to plead Lanham Act and state law claims.  The Court has already adjudicated one motion for summary judgment.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 100) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Amend (ECF No. 97) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 9th day of November, 2015.

_____
ROBERT C. JONES
United States District Judge